UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

BELEN JESUIT PREPARATORY
SCHOOL, INC.,
a Florida corporation,

       Plaintiff,

v.

SPORTSWEAR, INC., D/B/A
PREP SPORTSWEAR,
a Washington corporation,
CHAD HARTVIGSON, individually

       Defendants.

_____/

## COMPLAINT

Plaintiff, Belen Jesuit Preparatory School, Inc. ("Belen Jesuit" or "Plaintiff"), by and through its undersigned counsel, hereby sues Defendants, Sportswear, Inc. a/k/a Prep Sportswear ("Sportswear"), and Chad Hartvigson ("Hartvigson") (Hartvigson and Sportswear are collectively referred to as "Defendants") and states:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 (actions arising under the Lanham Act), 28 U.S.C. § 1338(a) (acts of Congress relating to trademarks), 28 U.S.C. § 1338(b) (pendent unfair competition claims) and 28 U.S.C. § 1367 (supplemental jurisdiction).

2.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)  because a substantial part of the events or omissions giving rise to the claim occurred in this District, or a substantial part of property that is the subject of the action is situated.

## NATURE OF ACTION

3.      This is an action in law and equity for statutory trademark infringement, common law federal trademark infringement, common law trademark infringement, counterfeiting, false designation of origin and unfair competition in violation of Section 42 of the Lanham Act of 1946, as amended, 15 U.S.C. § 1051, *et seq.*, and Florida State law.

## THE PARTIES

4.      Plaintiff, Belen Jesuit, is a corporation organized and existing under the laws of the State of Florida in Miami-Dade County.

5.      Defendant, Sportswear, is a corporation organized under the laws of the State of Washington, and conducts business in Florida and directly markets its goods and services into the State of Florida.  Its Registered Agent for service of process is Defendant Chad Hartvigson, located at 2211 Elliott Avenue, Suite 601, Seattle, Washington 98121.

6.      Upon information and belief, Defendant Hartvigson is an individual believed to reside at 2211 Elliott Ave, Suite 602, Seattle, WA 98121.  Upon information and belief, Hartvigson controlled the actions of Prep Sportswear as president of the company and was an active moving force behind the tortious conduct of the corporate Defendants as alleged herein.

## FACTS IN COMMON TO ALL COUNTS

### a.   *Belen Jesuit and its intellectual property.*

7.      Belen Jesuit is a college preparatory institution that was founded in 1854 in Havana, Cuba, by the Society of Jesus, a Roman Catholic order of priests and brothers founded approximately 500 years ago.

8.      In 1961, following political persecution in Cuba, the School was re-established in Miami the same year, and over the next decade, continued to grow.

2

9.      Since its inception, over 5500 young men have graduated from Belen Jesuit located in Miami, Florida.

10.     The school is well known in the community and nationally through the success of its alumni and the tens of thousands of parents and relatives of Belen Jesuit students and graduates.

11.     Belen Jesuit, through the years, has developed numerous trademarks associated with the schools it has operated and continues to operate.  *See all Belen Jesuit trademarks attached as Exhibit A*.  The marks in *Exhibit A* will be referred to as the School Marks or the Belen Jesuit Trademarks.

12.     The School Marks have been used for a variety of purposes including promotion of educational services, promotion of sports activities, manufacturing and sale of branded clothing products and other affinity goods to students and their families.

13.     Belen Jesuit trademarks are loved and recognized by students and families of students who have attended the school or seen its well-known sports teams compete.  In addition to the inherently distinctive marks, these marks have also acquired distinctiveness over their many years of use.  More so than most commercial trademarks, the public feels a deep personal connection with these marks and the goodwill related thereto in large part because of the nature of the educational services and the role Belen Jesuit plays in the development of young men in the South Florida community.

14.     Belen Jesuit has registered several of its school trademarks with the United States Patent Trademark Office.  *See federally registered trademarks attached as Exhibit B*.  The marks in Exhibit B will be referred to as the Federally Registered School Marks.

15.     Belen Jesuit values and defends its trademarks and has expanded their use over the past decades to generate revenues to help its school in providing children and young men with needed educational services.

### b. *Sportswear.*

16.     Sportswear is a corporation registered under the laws of the State of Washington. The company is, upon information and belief, owned by Defendant Hartvigson.

17.     Sportswear is in the business online garment retailing.

18.     Upon information and belief, Sportswear is in the business of printing and selling apparel and related goods featuring the insignias of what appear to be hundreds of colleges, universities, schools, sports teams, and other institutions including police departments and fire departments.

19.     Sportswear's website specifically does not include professional league trademarks or the trademarks of many universities with large sports programs or that are part of the National Collegiate Athletic Association (NCAA).

20.     Upon information and belief, Sportswear avoids marketing and offering for sale National Football League (NFL), National Basketball Association  (NBA), National Hockey League (NHL), Major League Baseball (MLB) and NCAA apparel and related goods, because it knows that it will be sued for trademark infringement given that it does not have a license to sell goods with those organizations' trademarks.

21.     Sportswear makes its sales by creating online "apparel stores" which present themselves as school apparel stores or as stores sanctioned by the schools.

22.     Upon information and believe, many schools whose school names, colors, logos and trademarks are displayed on the Sportswear website as purported school "apparel stores" have not authorized Sportswear to use them and are not affiliated with Sportswear.

23.     Furthermore, upon information and believe, many schools whose school names, colors, logos and trademarks are displayed on the Sportswear website as school "apparel stores" are not paid any money for the sale of such products.

24.     Upon information and believe, Sportswear has been sued on various occasions for engaging in such conduct but continues to engage in such conduct.  At least two lawsuits have been filed by other educational institutions and are currently pending against Sportswear for the conduct described in this Complaint.  These suits are *Muhlenberg College v. Sportswear, Inc.*, D/B/A Prep Sportswear, Civil Action No. 5:13-cv-07197-JLS E.D.Pa., and *Savannah College of Art and Design, Inc. v. Sportswear, Inc.*, Civil Action No. 1:14-cv-02288-TWT N.D.Ga.

25.     Among the hundreds of purported "apparel stores" on Sportswear's website are stores that display goods for sale bearing Belen Jesuit Marks standing alone or in conjunction with additional words or phrases.  *See Sportswear Infringing Sites attached as Exhibit D.*

   ***c.  Sportswear's' willful counterfeiting and infringement of the School Marks.***

26.     If a user searches by school name or geographic area it takes the user directly to a page titled as an apparel store for that school and provides branded products.  For example, Belen Jesuit is a nationally recognized college prepatory high school located in Miami- Dade County,  Florida.  If you type in Belen Jesuit on the Sportswear site you would get a link that takes you to the following page:



27.     The page opens by declaring in large letters that it is the Belen Jesuit Prep Wolverines Apparel Store.  The Wolverine is the mascot of Belen Jesuit.

28.     On the right, the Sportswear webpage correctly displays the street address of the school in order to create a further association with the physical school and to reinforce its impression of affiliation.

29.     After a display of the garments bearing the Belen Jesuit School Marks being offered for sale, the last area of the webpage contains a banner which emphasizes the impression that it is an authorized or affiliated site:

> Shop the **Belen Jesuit Prep Apparel Store** for a wide selection of **Belen Jesuit Wolverines** merchandise, gear, sportswear and clothing. Whether you are a **Belen Jesuit** student, parent, teacher, alumni or team member, customized **Belen Jesuit Prep Wolverines** clothing shows your pride and support when cheering on your favorite Football, Basketball, Baseball, Softball, Soccer or Lacrosse teams! Shop our School Store for your **Wolverines Merchandise**. Belen Jesuit Prep is located in Miami, Florida.

(bold in the original)

30.     All the way at the bottom of the page, more than two screens away and after the social networking buttons, in a part of the screen usually containing copyright information ignored by most users and in tiny font there is a disclaimer mixed in with other text which states in very small print: This store is not affiliated with, sponsored or endorsed by Belen Jesuit Prep.

31.     This disclaimer is so clearly concealed and unlikely to be seen by the user of the site that it can only be said to have been included as a fig leave to eventually show to the Court since Defendants clearly would have anticipated legal action.

32.     Each purported "Apparel Store" offers pull-down menus under headings such as "Store Home," "Men," "Women," "Kids," "Hats," "Skins & Decals," "Accessories," "Sports," etc. Each pull-down menu, in turn, offers a wide-range of categories of insignia wear, such as "T- shirts," "Sweatshirts," "Polos," "Warm Ups," "Bottoms," and the like. These pull down

menus lead to hundreds of products branded with the Belen Jesuit marks and colors. *See Apparel Store menus and sample items Exhibit D.*

**d. *The impact and damages caused by Sportswear's' willful counterfeiting and infringement of Belen Jesuit Intellectual Property.***

33.     Belen Jesuit has used the School Marks, including the Federally Registered School Marks, extensively and continuously for many years before Sportswear began marketing, selling, distributing and offering for sale goods and services in connection with counterfeit and/or confusingly similar imitations of the School Marks.

34.     Sportswear's use of confusingly similar imitations of the School Marks is likely to deceive, confuse, and mislead prospective purchasers and purchasers into believing that the goods and services marketed, sold, distributed, and offered for sale by Sportswear are produced by, authorized by, or in some manner associated with or sponsored by Belen Jesuit, which they are not.  The likelihood of confusion, mistake, and deception engendered by this wholesale and brazen misappropriation of the School Marks has caused irreparable harm to the goodwill symbolized by the School Marks and the reputation for quality and excellence that they embody, and that harm is ongoing.

35.     The harm is particularly egregious since it exploits the desire of parents and relatives of children who are misled into thinking that they are helping the school through their purchases.  The harm to the schools and to the trust of parents in making future purchases is severe.

36.     Purchasers, prospective purchasers and others viewing Sportswear's confusingly similar imitations of the School Marks in connection with Sportswear's goods and services are likely to mistakenly attribute the goods and services to Belen Jesuit.  These activities are therefore likely to cause confusion before, during, and after the time of purchase or use (or

attempted purchase or use) of Sportswear's goods and services.  This is particularly damaging with respect to those persons who may perceive a defect or lack of  quality in Sportswear's reputation, products, or services.  By causing such a likelihood of confusion, mistake, and deception, Sportswear has inflicted irreparable harm to Belen Jesuit's goodwill in the School Marks, and the reputation for quality and excellence that they embody, and that harm is ongoing.

37.     Sportswear is using counterfeit and confusingly similar imitations of the School Marks in connection with goods and services that are directly competitive with or related to Belen Jesuit licensed goods and services or within Belen Jesuit's natural zone of expansion.

38.     Sportswear's unauthorized use of the School Marks is commercial in nature and is intended to, and will, directly compete with the lawful publication, distribution and advertising commercial activities of Belen Jesuit and its licensees to the detriment of Belen Jesuit.

39.     On information and belief, Sportswear knowingly, willfully and intentionally adopted and used confusingly similar imitations of the School Marks to trade on the goodwill symbolized by the School Marks and the reputation for quality and excellence that they embody.

40.     Upon information and belief, Sportswear willfully and deliberately employs the School Marks to mislead and confuse consumers that Sportswear's goods and services are provided, sponsored, affiliated with, licensed or approved by Belen Jesuit.  Sportswear thus unfairly benefits from the goodwill and excellent reputation of the School Marks established by Belen Jesuit throughout Florida, the United States and internationally at great effort and expense.

41.     Sportswear has not now, and has never been, authorized by Belen Jesuit to use the School Marks or any other colorable imitations of the School Marks in connection with any goods or services, nor has Belen Jesuit consented to any such use.

42.     Through Sportswear's use of colorable imitations and counterfeit copies of the School Marks, Belen Jesuit's goodwill has suffered irreparable harm, which harm will continue as long as Sportswear's uses continue.

43.     Upon information and believe, defendant Hartvigson has controlled, directed and authorized all of the foregoing conduct.

44.     On September 28, 2012, Belen Jesuit wrote a letter to Dave Santiago, Executive Vice President Business Development & Sales at Sportswear and asked that they stop their unauthorized use of the School Marks.  Their unauthorized and infringing use continued.

45.     Belen Jesuit needs the issuance of an injunction to stop this infringement of its marks.

46.     Belen Jesuit has been forced to retain counsel and incur legal fees and costs as a result of the actions of Sportswear and Hartvigson.

47.     All conditions precedent to the filing of this lawsuit have been satisfied or waived.

## COUNT I

### DIRECT AND CONTRIBUTORY INFRINGEMENT AND COUNTERFEITING OF FEDERALLY REGISTERED TRADEMARKS AGAINST ALL DEFENDANTS

48.     Plaintiff readopts and re-alleges all the allegations contained in paragraphs 1 through 47.

49.     This is a claim by Plaintiff for direct and contributory infringement and counterfeiting of federally registered trademarks arising under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

50.     Defendants' activities, as alleged, constitute direct and/or contributory infringement and counterfeiting of Plaintiff's Federally Registered School Marks in violation of

Section 32 of the Lanham Act, 15 U.S.C. § 1114, all to the substantial and irreparable injury of the public and of Plaintiff's business reputation and goodwill.

51.    By such wrongful acts, Defendants have caused and, unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiff and to the goodwill associated with their registered Marks, including diversion of customers from them, lost sales and lost profits, and Defendants will be unjustly enriched.

52.    Defendants' acts are willful, intentional and egregious and make this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

53.    Upon information and belief, Defendant Hartvigson has been the active, moving force behind the corporate Defendant's tortious conduct, and should be held jointly and severally liable therefor.

## COUNT II

54.

## INFRINGEMENT OF COMMON LAW TRADEMARKS
## AGAINST ALL DEFENDANTS

55.    Plaintiff readopts and re-alleges all the allegations contained in paragraphs 1 through 47.

56.    This is a claim by Plaintiff for direct and contributory infringement and counterfeiting of Plaintiff's common law trademark.

57.    Defendants' activities, as alleged, constitute direct and/or contributory infringement and counterfeiting of Plaintiff's trademarks in violation of Plaintiff's common law trademark rights, all to the substantial and irreparable injury of the public and of Plaintiff's business reputation and goodwill.

58.     By such wrongful acts, Defendants have caused and, unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiff and to the goodwill associated with their registered marks, including diversion of customers from them, lost sales and lost profits, and Defendants will be unjustly enriched.  Plaintiff has no adequate remedy at law.

59.     Upon information and belief, Defendant Hartvigson has been the active, moving force behind the corporate Defendant's tortious conduct, and should be held jointly and severally liable therefor.

## COUNT III

### FEDERAL UNFAIR COMPETITION AND
### FALSE DESIGNATION OF ORIGIN
### AGAINST ALL DEFENDANTS

60.     Plaintiff readopts and re-alleges all the allegations contained in paragraphs 1 through 47.

61.     This is a claim by Plaintiff for trademark infringement and false designation of origin arising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

62.     Defendants' activities, as alleged, constitute infringement and/or contributory infringement of Plaintiff's trademark, false designation of origin, false representation and false description, all to the substantial and irreparable injury of the public and of Plaintiff's business reputations and goodwill.

63.     By such wrongful acts, Defendants have caused and, unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiff and to the goodwill associated with the Plaintiff's trademarks, including diversion of customers from Plaintiff, lost sales and lost profits, and Defendants will be unjustly enriched.  Plaintiff has no adequate remedy at law.

64. Defendants' acts are willful, intentional and egregious and make this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

65. Upon information and belief, Defendant Hartvigson has been the active, moving force behind the corporate Defendant's tortious conduct, and should be held jointly and severally liable therefor.

**COUNT IV**

**COUNTERFEITING
AGAINST ALL DEFENDANTS**

66. Plaintiff readopts and re-alleges all the allegations contained in paragraphs 1 through 47.

67. This is a claim by Plaintiff for counterfeiting of a federal trademark in violation of 15 U.S.C. § 1114.

68. Sportswear, without authorization or authority from Belen Jesuit has sold, offered for sale, distributed and/or advertised apparel and related goods that display counterfeits or colorable imitations of the Registered School Marks.

69. Defendants have engaged in this conduct in interstate commerce.

70. Defendants' conduct was intended to cause, have caused and are likely to continue to cause confusion, mistake and deception among consumers, the public and Belen Jesuit's present and potential licensees as to whether Sportswear infringing merchandise originate from or are affiliated with, sponsored by or endorsed by Belen Jesuit.

71. Defendants' acted deliberately with knowledge of Belen Jesuit's ownership of the Registered School Marks, with the willful intent to trade upon Belen Jesuit's consumer goodwill for Sportswear's sole profit.

72.    Defendant's conduct constitutes trademark counterfeiting in violation of 15 U.S.C. § 1114.

73.    Plaintiff has suffered monetary damages as a result of Defendants' unlawful acts in an amount to be determined at trial.

74.    Sportswear has caused and is likely to continue causing substantial injury to the public and to Belen Jesuit unless enjoined.

75.    Defendants' actions are willful, intentional and egregious and make this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

76.    Upon information and belief, Defendant Hartvigson has been the active, moving force behind the corporate Defendant's tortious conduct, and should be held jointly and severally liable therefor.

## COUNT VI

### COMMON LAW UNFAIR COMPETITION
### AGAINST ALL DEFENDANTS

77.    Plaintiff readopts and re-alleges all the allegations contained in paragraphs 1 through 47.

78.    This is a claim for unfair competition arising under the common law of the State of Florida.

79.    By their foregoing deceptive and/or fraudulent conduct creating a likelihood of confusion, each of the Defendants has unfairly competed with Plaintiff and/or contributed to acts of unfair competition by other Defendants or third parties, all to the substantial and irreparable injury of the public and of Plaintiff's business reputations and goodwill.

80.    By such wrongful acts, Defendants have caused and, unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiff and to the

goodwill associated with the Plaintiff's trademarks, including diversion of customers from Plaintiff lost sales and lost profits, and Defendants will be unjustly enriched.  Plaintiff has no adequate remedy at law.

81.     Upon information and belief, Defendant Hartvigson has been the active, moving force behind the corporate Defendant's tortious conduct, and should be held jointly and severally liable therefor.

**WHEREFORE,** Plaintiff prays:

(1)     That a preliminary and permanent injunction issue, pursuant to Section 42 of the Lanham Act, 15 U.S.C. §§ 1124 and 1125, and the equitable power of this Court to enforce the common law of the State of Florida, restraining Defendants, their agents, servants, partners, representatives, employees, successors and assigns, and all others in concert and privity with them from:

        (a)     Directly or indirectly making any use and/or causing, aiding, abetting or contributing to the actions of others in using:

                i.     Any trademark or product configuration which includes any two of the School Marks, a school color, a school graphic design which is otherwise confusingly similar to the School Trademarks, as identified herein, or to any other trademarks owned by Belen Jesuit, including their associated designs and trade dress if any; and

                ii.     Any advertisements or promotional materials or other items that are labeled with or contain trademarks designs or trade dress prohibited in i. above; and

        (b)     Directly or indirectly infringing Plaintiff's trademarks and/or trade dress; and

(c)     Directly or indirectly seeking to register trademarks and/or trade dress which are confusingly similar to Plaintiff's trademarks or trade dress; and

(d)     Directly or indirectly seeking to register Internet domains which are confusingly similar to Plaintiff's trademarks; and

(e)     Unfairly competing with Plaintiff; and

(f)     Falsely claiming any affiliation with Plaintiff.

(2)     That Defendants be required to account to Plaintiff for Defendants' profits and the actual damages suffered by Plaintiff as a result of Defendants' acts of infringement, false designation of origin, and unfair competition together with interest, that Plaintiff's recoveries be enhanced and/or trebled, and that prejudgment interest be awarded, pursuant to Section 43 of the Lanham Act, 15 U.S.C. §§ 1117 and 1125, Florida Statute § 501.20 et. seq.  and the common law of the State of Florida;

(3)     That Defendants be required to pay statutory damages to Plaintiff pursuant to Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c);

(4)     That Defendants be ordered to surrender for destruction all printed materials incorporating or imitating Plaintiff's trademarks and/or trade dress, pursuant to Sections 36 and 43 of the Lanham Act, 15. U.S.C. §§ 1118 and 1125, and the equitable power of this Court to enforce the common law of the State of Florida;

(5)     That Defendants be required to remove all Internet web pages making use of the Belen Jesuit trademarks or trade dress and surrender all domains incorporating or imitating Plaintiff's trademarks, and/or trade dress, pursuant to Sections 36 and 43 of the Lanham Act, 15. U.S.C. §§ 1118 and 1125, and the equitable power of this Court to enforce the common law of the Florida;

(6)     That Defendants be required to pay Plaintiff's attorneys' fees, together with costs

of this suit, pursuant to Section 35 of the Lanham Act (15 U.S.C. § 1117) ; and

(8)     For such other and further relief as may be just and equitable.

Dated:  June 9, 2015.

                                        ESPINOSA|TRUEBA, P.L.

                                        By: __s/William R. Trueba, Jr._____
                                                William R. Trueba, Jr.
                                                wtrueba@etlaw.com
                                                Florida Bar No. 117544
                                                Jorge Espinosa
                                                Florida Bar No.  779032
                                                Jespinosa@etlaw.com
                                                Francesca Russo
                                                Florida Bar No. 174912
                                                Frusso@etlaw.com
                                                1428 Brickell Ave., Suite 100
                                                Miami, FL 33131
                                                Tel:  305-773-3450
                                                Fax:  855-854-0900

                                                And

                                                Roberto M. Suarez
                                                Florida Bar # 95762
                                                Rob.suarez@suarezIPLaw.com
                                                LAW OFFICES OF ROBERTO SUAREZ
                                                250 Catalonia Avenue, Suite 601
                                                Coral Gables, FL 33134
                                                Tel: 305-482-1001

                                                *Attorneys for Plaintiff Belen Jesuit*
                                                *Preparatory School, Inc.*