UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:15-cv-22194-UU

BELEN JESUIT PREPARATORY SCHOOL, INC.,

    Plaintiff,

v.

SPORTSWEAR, INC.,

    Defendant.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS CAUSE was tried as a bench trial before the Court on May 16-17, 2016. The parties have submitted Proposed Findings of Fact and Conclusions of Law. D.E. 179-180.

THE COURT has considered the pertinent portions of the record and is otherwise fully advised in the premises.

## FINDINGS OF FACT

### A. The Parties

1. Plaintiff, Belen Jesuit Preparatory School, Inc. ("Plaintiff"), is a private school. Trial Transcript Day 1 ("Transcript 1") at 71:18-20. Since its founding in Miami, Florida in 1961, Plaintiff's primary business has been the provision of educational services. Transcript 1 at 67:18-68:1.

2. Defendant, Sportswear, Inc. ("Defendant"), is an internet-based business that sells customizable sports team apparel and fan clothing in relatively small batches for K-12 schools, colleges, minor league sports, international sports, Greek and military organizations, golf courses, and every city, state, and country around the globe. Bench Trial Day 2 Transcript ("Transcript 2") at 37:12-38:18; 62:5-14; D.E. 73-2 ¶ 2.

### B. The Relevant Trademarks

3. Plaintiff owns Registration No. 4,487,119 (the "119 Registration") on the Principal Register for the term BELEN JESUIT. The Patent and Trademark Office issued the '119 Registration to Plaintiff in February 2014 for use of the BELEN JESUIT Text Mark in connection with the provision of educational services. The BELEN JESUIT Text Mark is not registered for use in connection with the sale of clothing, headwear, or any other apparel goods. Transcript 1 at 92:3-93:6, Plaintiff's Exhibit No. 5; D.E. 13-2 at 1.

4. The relevant trademarks for purposes of this case are the BELEN JESUIT and BELEN JESUIT WOLVERINES Text Marks ("Alleged Text Marks") by themselves and in combination with the school colors of navy blue and gold. D.E. 13 ¶ 12.

5. The Alleged Text Marks are not registered with the United States Patent and Trademark Office. D.E. 13 ¶ 12. Rather, Plaintiff claims common law ownership in the Alleged Text Marks. D.E. 13 ¶¶ 54-58.

### C. Plaintiff's Failure to Establish Prior Use in Commerce

6. Plaintiff does not have evidence of when the Alleged Text Marks were first used in connection with the sale of apparel or related goods. Transcript 1 at 112:1-24; Plaintiff's Exhibit No. 21; D.E. 73-1 ¶ 19.

7. Only "some portion" of items sold by Plaintiff would have had the text "Belen Jesuit" or "Belen Jesuit Wolverines" printed on them. Transcript 1 at 112:1-24; Plaintiff's Exhibit No. 21; D.E. 73-1 ¶ 19.

8. Plaintiff does not have the ability to determine which clothing items that it sold had the Alleged Text Marks printed on them, at any point in time. Transcript 1 at 143:23-144:5.

9. Plaintiff has not produced or identified any sample clothing, or any product sold by Plaintiff, bearing the Alleged Text Marks. Transcript 2 at 87:24-25; 88:6-13.

10. Plaintiff relies on the sales records from its on-campus bookstore to establish "use in commerce." However, Plaintiff's sales records of the clothing that was sold contain vague descriptors, such as "blue sweatshirt." Transcript 1 at 144:13-145:9; Plaintiff's Exhibit No. 20. Plaintiff is unable to identify the exact items that were sold based upon the sales records and whether the items were decorated with the Alleged Text Marks at issue in this case. *Id.*

11. Plaintiff has not presented evidence of which items in its exhibits are sold for profit, either in its bookstore or online. Transcript 1 at 137:1-17; Plaintiff's Exhibit No. 25-1.

12. Plaintiff presents yearbook pictures of athletic uniforms as "evidence" of use of the Alleged Text Marks for the sale of clothing in commerce, but admits that it did not sell these items to the public or for a profit. Transcript 1 at 137:1-17; Plaintiff's Exhibit No. 25-1.

13. The sale of athletic uniforms is handled through Plaintiff's athletic department, not the bookstore, and the uniforms are directly sold by the school coaches to students at a cost. Transcript 1 at 135:20-136:19; 137-25:138:4; Transcript 2 at 25:10-13; 26:9-24.

14. Plaintiff admits that neither the bookstore nor Plaintiff has made a profit from the sale of athletic uniforms. Transcript 2 at 26:19-24.

15. Plaintiff also offers pictures of its students wearing school uniforms as evidence of the use of the Alleged Text Marks on clothing in commerce, but Plaintiff admits that it only sells parts of the school uniform in its bookstores. Transcript 1 at 139:21-140:25.

16. The portions of the school uniform that are sold out of the bookstore include jackets, sweaters, ties, and lanyards, which are not items that are sold by Defendant. Transcript 1 at 139:21-140:5; Plaintiff's Exhibit No. 4. Moreover, these items do not have the Alleged Text Marks printed on them.

17. The only other apparel item that constitutes a part of Plaintiff's school uniform is its physical education uniform, but there is no evidence in the record of what Plaintiff's physical education uniform looks like, so there is no basis of comparison for any portion of the school uniform. *Id.*

18. Plaintiff claims that 60-65% of the clothing items that are sold through its bookstore are printed with the Alleged Text Marks "Belen Jesuit" or "Belen Jesuit Wolverines," Transcript 1 at 107:2-9; 115:24-116:3, but this number is not based on any empirical data. Transcript 1 at 141:3-25; 150:4-17.

19. Plaintiff also claims that there are items sold that have "unique Belen Jesuit tags," but there is only one picture of such an item in the record, and it does not include the alleged Text Marks at issue in this case. Transcript 1 at 107:16-108:5; 130:25-132:25; Plaintiff's Exhibit No. 26 at 0047. Otherwise, Plaintiff admits that no other items bearing the "Belen Jesuit tag" were produced for this litigation. Transcript 1 at 131:4-13.

20. Plaintiff does not advertise or promote the Alleged Text Marks in connection with the sale of apparel and does not have a separate budget for marketing or promoting clothing sales; rather, Plaintiff only advertises or promotes its educational services or events. Transcript 1 at 85:22-76:5, 78:13-79:2; Defendant's Exhibit No. 8.

21. Plaintiff spends its annual $20,000 advertising budget on mostly radio advertisements and some local newspaper advertisements for its community events or educational services – none are for clothing or apparel promotion. Transcript 1 at 81:19-82:21. Instead, Plaintiff only advertises as a provider of educational services, and there are not separate promotional budgets for advertisements of clothing sales. Transcript 1 at 78:13-79:16; 83:19-84:4; 153:19-22; Plaintiff's Exhibit No. 25; D.E. 73-1 ¶ 31.

22. There are no samples or any other direct evidence of any advertisements for apparel sold out of Plaintiff's on-campus bookstore or its online e-store in the record. *See* Transcript 1 at 83:7-17; 153:7-10; Plaintiff's Exhibit No. 25.

## CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

1. The Court has subject matter jurisdiction over Plaintiff's claims under 15 U.S.C. § 1121, 28 U.S.C. § 1388(a). The Court has subject matter jurisdiction over Plaintiff's Florida common law claims under 28 U.S.C. § 1338(b) and § 1367.

2. The Court has general personal jurisdiction over Plaintiff and specific personal jurisdiction over Defendant.

### B. Plaintiff's Claims against Defendant

#### I. COMMON LAW TRADEMARK INFRINGEMENT

3. To prevail on trademark infringement under common law, a plaintiff must establish: "(1) that it had prior rights to the mark at issue, and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001).

4. A plaintiff need not have a federally registered trademark to establish that it has a valid trademark. *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010). Rather, "the use of another's unregistered, i.e., common law, trademark can constitute a violation of § 43(a) where the alleged unregistered trademarks used by the plaintiff are so associated with its goods that the use of the same or similar marks by another company constitutes a false representation that its

goods came from the same source." *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512-13 (11th Cir. 1984).

5. The court must first resolve the issue of ownership because a defendant cannot be liable for trademark infringement if the claimant does not possess valid and enforceable rights in the marks. *Knights Arnament Co. v. Optical Sys. Tech., Inc.*, 647 F. Supp. 2d 1321, 1329 (M.D. Fla. 2009), *aff'd*, 654 F.3d 1179 (11th Cir. 2011) (citing *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 648 n.8 (11th Cir. 2007) (consideration of whether a party has a "protectable interest in its trade name" is a "threshold inquiry" that may render "the likelihood-of-confusion inquiry superfluous.")).

6. However, trademark ownership rights are "appropriated only through actual prior use in commerce." *Planetary Motion, Inc.*, 261 F.3d at 1194 (citing *Tally-Ho, Inc. v. Coast Comm. College Dist.*, 889 F.2d 1018, 1022 (11th Cir. 1989)). Upon proof that the trademark was used in commerce, a plaintiff need only show that its mark is "capable of distinguishing the owner's goods from those of others, i.e., that it is sufficiently 'distinctive.'" *Tana*, 611 F.3d at 773.

7. Because Plaintiff does not own any registrations for use of the Alleged Text Marks in association with clothing, and its resulting claims are therefore based on ownership of two unregistered text marks (BELEN JESUIT and BELEN JESUIT WOLVERINES), no presumption of exclusive rights extend to those common law marks. D.E. 163 at 11-13; *see also Gameologist Grp. LLC v. Sci. Games Int'l Inc.*, 838 F. Supp. 2d 141, 153-54 (S.D.N.Y. 2011) ("the presumption of an exclusive right to use a registered mark extends only to the goods and services noted in a registration certificate").

8. To prove that it has valid trademark ownership rights, Plaintiff must establish that it used the Alleged Text Marks in commerce prior to 2008, which is the date upon which Defendant first sold goods bearing Plaintiff's Alleged Text Marks.

### a) Prior Use in Commerce

9. To establish "use in commerce," a party must produce evidence "showing, first adoption, and second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopted of the mark, is competent to establish ownership[.]" *Bronstein v. Bronstein*, No. 06-80654-CIV, 2007 WL 646965, at *9 (S.D. Fla. Feb. 27, 2007).

10. "To acquire ownership of a trademark, one must actually use the designation as a mark in the sale of goods or services. No trademarks accrue to someone who merely selects a designation without actual use of it in the advertising or sale of goods." 2 MCCARTHY § 16:11.

11. "[T]he use of a mark in commerce also must be sufficient to establish *ownership rights* for a plaintiff to recover against subsequent users under section 43(a) . . . Courts generally must inquire into the activities surrounding the prior use of the mark to determine whether such an association or notice is present." *Planetary Motion*, 261 F.3d at 1195.

12. "Trademark ownership is always appurtenant to commercial activity. Thus, actual and continuous use is required to acquire and retain a protectable interest in a mark." *Tally-Ho*, 889 F.2d at 1018; *see also Brookfield Comms., Inc. v. West Coast Enter. Corp.*, 174 F.3d 1036, 1051 (9th Cir. 1999) ("Congress amended the Lanham Act in 1988 to strengthen this 'use in commerce' requirement, making clear that trademark rights can be conveyed only through the 'bona fide use of a mark in the ordinary course of trade, and not [use] made merely to reserve a mark.").

13. At trial, Plaintiff failed to show it used any of the Alleged Text Marks in commerce in connection with the sale of clothing before 2008, the date when Defendant first sold goods printed with the terms. Transcript 1 at 112:1-24; Plaintiff's Exhibit No. 21; D.E. 73-1 ¶ 19.

14. Plaintiff has not produced a single item sold in commerce bearing the Alleged Text Marks at issue. Transcript 1 at 137:1-17; Plaintiff's Exhibit No. 25-1. The Court cannot find that Plaintiff sufficiently "adopted" its Alleged Text Marks for use in connection with the sale of clothing if Plaintiff is unable to identify or produce the exact items that are at issue.

15. Furthermore, Plaintiff has not produced any competent sales records, or any evidence whatsoever, to demonstrate when, if ever, the exact items bearing the Alleged Text Marks were sold. Plaintiff cannot point to sales records with ambiguous descriptors to establish that the items contained the Alleged Text Marks. Transcript 1 at 144:13-145:9; Plaintiff's Exhibit No. 20. There is no indication that such items contained the Alleged Text Marks.

16. Plaintiff produced photographs of its athletic uniforms to establish adoption of its Alleged Text Marks and that these uniforms were sold in commerce; however, it is undisputed that these uniforms were directly sold by the coaches to the students. Transcript 1 at 137:1-17; Plaintiff's Exhibit No. 25-1. The items were not sold at its bookstore. Therefore, it cannot be said that these items were sold in commerce. *See Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 667, 676 (W.D. Tex. 2008) ("A mark is used in commerce 'when (A) it is placed on the goods . . . and (B) the goods are sold or transported in commerce.'").

17. Plaintiff further points to photographs of its students wearing school uniforms as "evidence" of the use of the Alleged Text Marks on clothing in commerce; however, Plaintiff has

admitted that it only sells pieces of the uniform from the bookstore, and none of these pieces contained the Alleged Text Marks at issue. Transcript 1 at 139:21-140:25.

18. Plaintiff is unable to determine how much profit it received as a result of the sale of clothing items bearing the Alleged Text Marks. Transcript 1 at 137:1-17; Plaintiff's Exhibit No. 25-1.

19. Finally, it is undisputed that Plaintiff only advertises as a provider of educational services, and there are not separate promotional budgets for advertisements of clothing sales. Transcript 1 at 78:13-79:16; 83:19-84:4; 153:19-22; Plaintiff's Exhibit No. 25; D.E. 73-1 ¶ 31. *See Bronstein*, 2007 WL 646965, at *13 ("Advertising connected with extensive promotion has been found to vest priority rights in a mark.").

20. Based on the totality of the circumstances, Plaintiff failed to carry its burden of proving its Alleged Text Marks are valid and entitled to protection as a matter of law.

### b) *Distinctiveness of the Alleged Text Marks*

21. Because Plaintiff failed to show its Alleged Text Marks were used in commerce, the Court is not required to reach the issue of the Alleged Text Mark's distinctiveness. *Internat'l Healthcare Exchange, Inc. v. Global Healthcare Exchange, LLC*, 470 F. Supp. 2d 365, 372 (S.D.N.Y. 2007) (declining to consider whether the trademarks were distinctive upon a finding that the plaintiff failed to proffer sufficient evidence to establish that it maintained ownership of protected rights in the trademark).

## II. UNFAIR COMPETITION – FEDERAL LAW

22. To prove that Defendant is liable for unfair competition under the Lanham Act, Plaintiff must establish the following elements: (1) Plaintiff had prior rights to the mark at issue, and (2) Defendant adopted a mark or name that was the same, or confusingly similar to,

Plaintiff's mark such that consumers were likely to confuse the two. *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004).

23. Plaintiff failed to establish that it had valid ownership to the use of the terms "Belen Jesuit" and "Belen Jesuit Wolverines" in conjunction with clothing, much less any rights prior to Defendant's first use of the Alleged Text Marks in 2008. *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1320-21 (11th Cir. 2011); *Epic Metals Corp. v. Soulier*, 99 F.3d 1034, 1038-39 (11th Cir. 1996).

24. An unfair competition claim based only upon alleged trademark infringement is practically identical to an infringement claim. *FN Herstal, S.A. v. Clyde Armory, Inc.*, No. 3:12-CV-102, 2015 WL 4973693, at *4 (M.D. Ga. Aug. 20, 2015) (citing *Tally-Ho*, 889 F.2d at 1026 n.14).

### III. UNFAIR COMPETITION – FLORIDA LAW

25. The elements of a common law claim for unfair competition in Florida are the same as those for a Lanham Act infringement claim. *Ordonez v. Icon Sky Holdings, LLC*, No. 10-60156-CIV, 2011 WL 3843890, at *5-6 (S.D. Fla. Aug. 30, 2011) (citing *Tally-Ho*, 889 F.2d at 1025-1026). "Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition." *Planetary Motion, Inc.*, 261 F.3d at 1193 n.4.

26. Because Plaintiff fails to establish that it has valid trademarks, its state law claims fail as well. *Tally-Ho*, 889 F.2d at 1025-26.

### C. Damages

27. Because Plaintiff fails to show that the words "Belen Jesuit" or "Belen Jesuit Wolverines" are valid, protectable marks, Plaintiff is not entitled to any damages for its claim of trademark infringement under the Lanham Act.

28. Because Plaintiff fails to show that the Alleged Text Marks are used by Defendants as trademarks on apparel, Plaintiff is not entitled to any damages for its claim of trademark infringement under the Lanham Act.

### D. Injunctive Relief

29. Because Plaintiff fails to show that the words "Belen Jesuit" or "Belen Jesuit Wolverines" are valid, protectable marks, Plaintiff is not entitled to injunctive relief under the Lanham Act.

30. Because Plaintiff fails to show that the Alleged Text Marks are used by Defendant as trademarks on apparel, Plaintiff is not entitled to injunctive relief under the Lanham Act.

### E. Attorneys' Fees

31. Because Plaintiff's trademark infringement claims fail as a matter of law, this is not an exceptional case under 15 U.S.C. § 1117 such that Plaintiff is entitled to its attorney's fees.

DONE AND ORDERED in Chambers at Miami, Florida, this 29th day of June, 2016.

UNITED STATES DISTRICT JUDGE

cc:
counsel of record via cm/ecf